23-1135 Griffith v. El Paso County Darlene Griffith is a transgender woman who has lived in the community as a woman for over 20 years. She dresses in feminine attire, takes feminizing hormones, and has breasts. When Ms. Griffith arrived at the El Paso County Jail as a pretrial detainee, defendants refused to house her on the women's side of the facility. The District Court dismissed the entirety of Ms. Griffith's complaint, although it acknowledged this is a challenging case that, quote, raises sensitive and important constitutional issues. Four claims are at the heart of this appeal. In a few minutes, you'll hear from the United States, who will be addressing the equal protection and disability claims. And although I'm happy to answer any questions this court has, in the interest of time, I'll be focusing on the claims relating to the strip search, the cross-gender abusive strip search, and the conditions claim. Can I ask you one question about the ADA claim, please? Yeah. So you're asking us to reach the merits of those claims, and I'm wondering if we can do that if the only properly named defendant was not in the case. So I think Your Honor is referring to the fact that that claim is against the county. Yes, correct. And the District Court held that the county is not a proper defendant. And dismissed it on jurisdictional grounds, right? No, that's not my understanding of what the District Court did. The District Court went on to address, although it dismissed the claims against the county for being improperly pled, it addressed the merits of the ADA claim and said that Ms. Griffith had alleged a disability claim and had met all the elements, but said that because the defendants didn't know that her disability, that gender dysphoria was covered under the ADA, there was no subtle law that applied, and so dismissed the claim on that basis. So because the District Court did make that legal error on the merits of her ADA and rehab act claims, it's properly before this court, and for the reasons that is in our brief in the United States full address, we would ask this court to reverse on this claim. But those claims were raised only against one defendant, right? Yes. So when back in the District Court, Ms. Griffith would request to amend the complaint to allege a claim against Sheriff Elders in his official capacity, but everyone understood that claim to be a Monell claim, a policy-based claim, and that's the way the District Court addressed it. So although it's true that it was against an improper defendant, at this point the court needs to address it because the District Court addressed it. It needs to fix the error and send it back to the District Court, and then at that point we can work out who the defendants are for that claim. Let me just ask a follow-up on the ADA. Did she ever make an express request for accommodation invoking the ADA? Did she say, I'm invoking my rights under the ADA as opposed to, I would like this or that or the other thing? Yes, Your Honor. The complaint alleges that she told them she had gender dysphoria, requested an accommodation under the ADA. So she specifically made the request in real time for an ADA accommodation. I believe that she did, Your Honor, and in addition to repeatedly requesting accommodation, and we know that she did because she had a screening with an officer specifically to address. Okay, you're right. That's all I need. You go ahead. I don't want to take more time. Thank you, Your Honor. So turning first to the claim about the strip search, upon first entering the jail, Ms. Griffiths was subjected to an abusive strip search by a male officer, despite the fact that there was a female officer who was available to conduct the search. Because of the serious privacy concerns inherent in strip searching and inherent in cross-gender strip searching specifically, this court has said that such searches are acceptable only in circumstances of emergency or exigent circumstances. Here, there was no justification for the cross-gender search at all, let alone something that would justify an emergency situation that would justify a search. The complaint alleges that A43, there was no legitimate penological purpose for the cross-gender nature of the search. And more than that, the humiliating and abusive manner in which defendant must have conducted the search, which the district court described as sickening and reprehensible. Is there any difference analytically between your Fourth Amendment and Fourteenth Amendment claims? Right. For the most part, the claims are identical. They both sort of involve the question of whether there was penological justification for the search as conducted. The only way they diverge is that the nature of the search and sort of the gross way in which it was conducted is more applicable to the Fourth Amendment search claim. And the case law bears that out. So in other words, there's just an extra reason that her Fourth Amendment claim survived. Is it clearly established that this type of search would violate the constitutional rights of the prisoner? It is, Your Honor. It has for decades been clear in this court that cross-gender searches without the justification that we talked about is constitutional. Sorry, I may have gotten confused. Is unconstitutional absent exigent circumstances. That's Hays. And the Ninth Circuit in Byrd explained that this court is not alone. There is a robust consensus of appellate authority to the same effect. Essentially that absent emergency circumstances, cross-gender searches are not allowed. Does it matter the facts here? We have a transsexual woman in a men's prison. Does that change the clearly established calculus at all? I don't think it does, Your Honor, because the way that we analyze these claims are about bodily integrity and privacy. There's no dispute that Ms. Griffith identifies as a woman, has lived as a woman for over 20 years, has been housed in women's facilities on two prior occasions, and so for the purposes of a claim that's based on bodily integrity and privacy, should be treated as a woman. It's possible, Your Honor, that as to the merits, the fact that she was transgender would be part of the analysis, would be part of the penological justification, but at this stage, there's no question that the law was clearly established that absent that penological justification, a search cannot be conducted. So you don't think that we need more specificity factually to satisfy clearly established law here? I don't, Your Honor, and this court made that clear in Paul Bruno. When it talked about, again, the concerns of bodily privacy and the bearing of one's naked body, and again, in a penological setting, it is clearly established that at a general proposition, that is enough to put defendants on notice in that situation. And more specifically to defendant must depict himself, who conducted the search in this manner, and I'm not going to subject the court to the words that he used, but he used graphic language, threatened to rape my client, and then threatened her that if she told anyone, she would be retaliated against. There's no situation in which an officer under those circumstances would think that a search like that is constitutional. And so based on Hayes, based on Paul Bruno, and based on... Are strip searches routine in this prison? I mean, is it part of the routine of the prison, men, women, they're subject to strip searches regularly? It's not on the record, Your Honor, but I think it's safe to assume that strip searches are... She wasn't singled out. She was not singled out. Her only objection is that a male guard was searching her rather than a female guard. Exactly, Your Honor. We're not saying a strip search full stop was impermissible. We're saying the way in which the strip search happened, the fact that she was strip searched by a male guard when there was a female guard present to conduct the search, that's the problem. Did she not object to the female's part of the search at all? She objected to the male deputy being present in the room when the female officer conducted the search on the top of her body. And then as Defendant Ellis, the woman who was leaving the room, Ms. Griffith, again, pleaded for her to stay and be the one to conduct the strip search on the bottom of her body. On the conditions of confinement issue, what plausibly alleges deliberate indifference? Against which defendant, Your Honor? I'm sorry. My note showed no forward or elder. Yes. So, yes, no conducted the intake and forward conducted the ADA interview. So I'll take those two together. So they both had knowledge of the unconstitutional conditions that they were subjecting Ms. Griffith to. And she specifically requested to be put. Well, the conditions wouldn't be unconstitutional if they were if they were not unsafe. Right. I mean, just because she's going into a men's prison, that doesn't establish a constitutional violation. There's got to be more. Right. In the specific facts of this client and as alleged in the complaint, I'd like to push back on that a little bit, Your Honor, because she told them that she identified as a woman, had been living as a woman for 20 years, had been previously housed in women's facilities. She told them she had gender dysphoria and that her dysphoria would be exacerbated by being housed in a men's facility, treated as a man, touched by men. And we and the complaint alleges that the significant risks facing transgender women in general. And again, she told them that she would be subjected to these risks. One additional fact, again, specific to my client, is that she is legally blind. And so, you know, as someone who has breasts and takes feminizing hormones, she was at additional risk in the men's side of the jail. Is your conditions of confinement claim preserved? It is, Your Honor. Could you walk through the preservation by defendant? I was not tracking that from your brief. So the district court addressed the conditions claim. The district court said that she had not alleged personal participation by any of the defendants sufficient to survive a motion to dismiss. I just talked about Defendant Snowy and Ford and Defendant Elder as the person responsible for the policies, obviously had participation, personal participation on that front. So this was a claim that the district court addressed, or the magistrate judge addressed, and then was addressed in the objections to the report and recommendation. And then the district court said, I am looking at everything de novo and I agree wholeheartedly with everything the district court did. And then it went on to address a couple of specific objections that Ms. Griffith made, not on the conditions claim, but did clearly read all the material and look at everything closely. Do you challenge the ruling as to Mustafik and Ellis on appeal? On the conditions claim? Yes. No. No. Okay. Yeah. The only claims at this point are against Elder, Snowy, and Ford for the conditions claim. And if I could interrupt, how have you allocated your time with the government? I believe that the government, I think that the government's time came off already. It did not. I'm going to sit down then. She started at 15. She started at 15. I know. Did we grant additional time? The government had six minutes of my time. I thought it came off. Let's give them six minutes. Okay. Thank you. Thank you. Go ahead and give him six minutes. May it please the court. Matthew Drebsen for the United States. I'll be addressing two issues this morning. First, and just to summarize, on Darlene Griffith's equal protection claim, heightened scrutiny applies to the jail's policy that based her housing and other treatment on her sex assigned at birth without regard to her gender identity. That is a facial, sex-based classification, so it has to satisfy heightened scrutiny. You said it, but I didn't understand it. What is the basis for the heightened scrutiny if you don't look at the gender issue? Because it categorizes each individual that comes into the jail by their sex. In Griffith's case, the jail categorized her as male. You're saying so that regardless of any transgender issue, everybody, every male, gets heightened scrutiny evaluation because they're going into the jail? That's right. The fact that the policy classifies all individuals by their sex triggers heightened scrutiny. And then a separate question is whether the defendant government could justify that policy based on important governmental interests. We haven't reached that stage in this litigation because it was 12 v. 6. Yeah, Sean, I'm sorry. All right. So if the plaintiff here were a biological male who wanted to be housed in the woman's prison, that would be an equivalent situation as to Griffith's position in this case? So the fact that the jail separates housing and determines housing and other treatment by sex triggers the heightened scrutiny. Whether it's justifiable in that case as opposed to this one would be a different question. Does that mean that the default position under the Equal Protection Clause is that a mixed male-female prison is required and that to separate them requires some additional heightened justification? Not at all. I don't take anyone to be arguing in this case or other cases that the existence of separate men's and women's wards ought to be eliminated and all prisoners ought to be held together. What's argued in this case is specific to Darlene Griffith because her gender identity was disregarded and she was treated solely based on her sex. That's a sex-based classification. In fact, I don't understand the appellees to be arguing to the contrary. All they argue is that your decision in Brown v. Zaveris requires a different result. It doesn't. The district court would have applied heightened scrutiny were it not for Brown. I think all that has to be done in the equal protection issue in this case is for this court to clarify that Brown is not controlling. That's for several reasons. That was a pro se prisoner litigant whose allegations were too conclusory to permit proper legal analysis. That's how Judge Henry's opinion put it. That litigant did not raise all the same theories for heightened scrutiny that are raised in this case. The nature of the equal protection theory in that case was different. It was about access to hormone therapy as opposed to challenging a policy that facially classifies all individuals by sex. It's your position that it's unnecessary to reach whether transsexualism would be a suspect protected class. Do we need to go there at all? That is one of multiple ways by which you might get to heightened scrutiny. But that's not your lead argument, is it? Right. It's a footnote in our brief. The district court did think that the four-factor test for identifying a quasi-suspect class was satisfied here and the appellees don't dispute that. And Brown doesn't prevent us from reaching that question. That's right, exactly. In the time remaining, I'd like to turn to the settled law issue under the ADA and the Rehabilitation Act. Can I ask one more question on this before you move on? How much can we look at Bostock's reasoning here? How much can we import the reasoning under Title VII into the context here? Or do we need to? I think the logic transfers, the reasoning readily transfers from the Title VII context to the equal protection context. I don't think you can bring in Bostock. You don't need to because this is a facial sex classification. But the logic readily transfers and appellees did not dispute that Bostock would transfer. On the settled law issue. One concern I have here is we're looking at a prison inmate placement decision and you're drawing a constitutional rubric to that and I think you would recognize that a jail could have a peniological reason for segregating men, women, transsexual inmates depending on the individualized circumstances of each. My question is how does the complaint plausibly allege that El Paso's reasons for its inmate placement decisions are not based on a legitimate, rational, peniological interest? I think the key allegations there are the significant distress that Griffith experienced, the assaults at the hands of other inmates. That may mean they made a bad placement decision. That doesn't necessarily mean that the placement decision from the onset was irregular. That may be your honor as an initial matter. Griffith was in the El Paso County Jail for more than a year and repeatedly reiterated the request for different treatment and so I think it's that whole span of time that would be at issue in this case. Where does the complaint establish that the jail's justifications for the placement were illegitimate? I don't know that a complaint has to make those allegations though I should say we didn't take a position on that in our brief. I think Griffith made detailed allegations about the difficulties that she encountered as a result of that treatment and I think that's adequate to trigger heightened scrutiny. My light is on. Go ahead, I'll give you more time. Briefly on the settled law requirement, the district court reasons that Griffith could not allege deliberate indifference because district courts had disagreed about whether gender dysphoria is a protected disability and the district court cut the claim short on that basis. So the district court never really got, we never really got a ruling on separate justifications for the prison. I didn't think that was something that was properly fleshed out yet in this case. As to equal protection, whether the government, the appellees, could satisfy heightened scrutiny, that's correct, your honor. That is to be litigated on remand. If I may just on the settled law requirement. It has no foundation precedent. Every other court to rule that gender dysphoria is a protected disability has let those claims proceed, perhaps most notably the Fourth Circuit in Williams v. Kincaid. That's what should have happened here. This novel settled law requirement rests on no precedent. The appellees cite the Roberts v. City of Omaha decision out of the Eighth Circuit. That was about failure to train. Failure to train theories are not presented here. And so we urge the court to clarify that alleging deliberate indifference does not include the settled law requirement because it would sow confusion in district courts if that became a new hurdle that had to be cleared any time a case raises a disputed question of statutory interpretation. Before you sit down, there's a firm waiver argument by the county on whether you preserve these arguments adequately in the district court. Could you respond to that? The United States doesn't take a position on that issue, only the issues that are in our brief. My colleague could perhaps address that. Okay, thank you. Thank you, Your Honor. I'll give you some brief rebuttal time. All right, let's hear from the county, Mr. Schneider. Morning, Your Honors. May it please the court. My name is Chris Strider. I represent the El Paso County defendants. The issues before the court today, I would argue, boil down to what is fair notice? What is fair notice to the individual deputies conducting the proper administration of the day-to-day activities of the El Paso County Jail? What is fair notice to the elected official or the entity, the El Paso County Sheriff's Office? And what is fair notice to the district court as to would the plaintiff's objection be sufficiently specific to allow the Article III judge to grapple with the issues, both factual and legal, to render an informed ruling? Let me ask just a yes or no question here. Are you arguing that Mr. Moskopik did not have fair notice, that his search was probably unconstitutional? I believe the court is referring to the Fourth Amendment claim as to an unreasonable search or seizure. I want to clarify factually that this was a visual search only. There was no physical contact. You're saying that even his statements in the visual, well, it was more than visual. There was hands-on. No, there was not. There was no hands-on at all?  I'm sorry. Okay. The search was termed by the plaintiff as a visual body cavity search. I think there is some confusion because it was alleged to have been conducted aggressively, I would imagine, in the light of Deputy Moskopik's comments. Thank you for this. I would argue that Deputy Moskopik, if we're looking at this under the standard of qualified immunity, was not on notice under that standard that his comments, his actions would have been grounds for a Fourth Amendment violation. That is noted by the magistrate when it cites the multiple cases in which a Fourth Amendment claim was supported by the unreasonableness of a body cavity search or a visual body cavity search, as termed by the plaintiffs more commonly known as a strip search. They cite cases where a Fourth Amendment claim where the inmate alleged they were subjected to a video-recorded body cavity search conducted in the presence of over 100 people, including female secretaries and case managers from other buildings. A case, Calhoun, the Seventh Circuit, alleging that during the search the guards made ribald comments and sexually explicit gestures, forced the plaintiff to perform sexually provocative acts, and female guards were neither mere passerby nor performing a legitimate penological function, but instead were invited spectators. The alleged conduct here, without conceding that this conduct actually happened, but the alleged conduct here would be reprehensible. And even so, it does not rise to the level of the Fourth Amendment violation of the plaintiff claims. And therefore, without that established constitutional right, without that case law to put Deputy Muspick on notice that these actions would have been violative of Ms. Griffith's Fourth Amendment rights. No, I don't believe he was properly on notice from a legal standpoint. Returning to the fair notice standard, this jurisdiction has adopted a fair notice, I'm sorry, a fair waiver rule. And I don't believe... Firm waiver. Firm waiver rule. I'm confusing my efforts. Don't do that. I won't any further than I already have. Careful. Thank you. The court properly noted that the arguments that were reiterated in the objection to the magistrate's recommendation were essentially just a verbatim recounting of the initial complaint. There was no specific pinpointing of the magistrate's recommendation upon which the Article III judge could rely or use as a guidepost to focus her analysis. Are you aware of any case where we've relied on the firm waiver rule to refuse to review an objective party's position here? Ms. Griffith filed a 30-page objection. Seems like the firm waiver rule is used to sort of parse, right? When there's multiple reasons, you can't just say, well, I objected, and then have all of those reasons available to you on appeal. Here, it seems that this plaintiff did plenty. Why not? Well, initially, this plaintiff did only reiterate the entire complaint in objection to the Article III judge. U.S. v. 1 Parcel, that's 73 Federal 3rd, 1057. That is a case in which the court correctly upheld the firm waiver rule in this jurisdiction and set out the standard to say that the objection must be sufficiently specific to focus attention on facts and issues at the heart of the dispute and that the Article III judge's de novo review does not revive that objection, does not satisfy that standard. Arguably, the Article III judge, if they want to review the merits and are left with no other guidance, they're going to look at the entire thing. And that was noted within the Article III judge's ruling in this case. If we disagree with you on the firm waiver and moving to the merits of the Equal Protection Claimer, are you conceding that heightened scrutiny applies here because it's a sex-based classification? No, Judge, I'm not conceding that because that wasn't the law at the time that the alleged actions took place. Whether or not it applies now, or whether or not it applies moving forward is a decision for your Honours to make. But again, we come back to the idea of what is fair notice to the people on the ground. Well, are you relying on Brown? We are relying on Brown for the... I'm sorry, go ahead. I'm sorry. No, you go ahead. Please finish your answer. We are relying on Brown to say that that was the Tenth Circuit decision at the time that was the established law in this jurisdiction. It's notable that Brown in dicta said that the underlying Ninth Circuit case, I believe it was Holloway, should be revisited, and indeed it was. Holloway, which stood for the holding in Brown that transgender people are not... Classification of transgender people are not subject to heightened scrutiny. That case was overturned in 2000. However, there were two unpublished opinions that came out after Brown in this jurisdiction  that still said Brown is the law of the land. What is a good law on? I guess my question for you is if you can point us to where in Brown we articulated the holding that you contend decides the issue in your favor. I would point to Brown as standing for a fairly one-line holding that says transgender people are not a protected class under the 14th Amendment. So that's what you're relying on to dispose of what claim? That would be the equal protection claim to say that heightened scrutiny didn't apply. So you're not parsing it between... Well, let me ask it this way. Do you agree that Brown didn't reach sex classification at all? Brown did not address this as gender classification and didn't establish that transgender equals gender, which I believe the Bostock case addressed that in the context of Title VII, not in the context of the 14th Amendment. It seems the question for us is does the policy on its face classify based on biological sex? Would you agree that's the question before us? Well, I would agree to that except for the fact that no particular policy was cited in the plaintiff's briefs. Let's assume that the policy that is at issue is the placement and the access to certain commissary products. Yes. So is the question before us whether those policies on their face classify based on sex, biological sex? I hesitate to adopt that because that, again, was not the law at the time. I would argue was the law at the time sufficient to put somebody on notice that making that classification decision would be making a classification based on gender? And we're talking about an inmate who was coming into the jail who at the time had gone through some hormone replacement therapy but who maintained male genitalia. Ms. Griffith had not undergone gender affirmation surgery and so at this point... But Ms. Griffith identifies as a woman, lives as a woman, so we're going to now parse it that finely? I don't understand why... I'm trying to understand what the question is in this case for us and if you have a better way of saying it so that I understand it, I would appreciate it. I thought the question before us on the equal protection claim was whether the policies at issue on their face classify, make a decision, make a choice based on biological sex. And if the answer is yes, it's well established that intermediate scrutiny applies. Well, I believe the argument that's raised is whether or not the level of scrutiny that was applied by the district court was appropriate in this case. Whether or not heightened scrutiny should have been applied in Ms. Griffith's instance. And at the time that these actions were taking place, the answer would be no. So do you think Bostock changed the law? Because of Brown. Because of Brown? Because of its progeny. It would be one thing if Brown said that Holloway should be revisited and then five years after Holloway was overturned, the 10th Circuit came back and said Holloway's been overturned. It's no longer a good basis for continuing to hold that transgender is not a protected class under the 14th Amendment. Is Brown then good law post-Bostock? I'm sorry. Is Brown good law post-Bostock? Yeah. Honestly, I am not sure on that. And this cuts to the heart of the issues here. This is a murky area of law. This is divided amongst the districts in this jurisdiction, or the district courts in this jurisdiction. I'm aware of at least two other cases that are pending the decision of this court in this case where the district court judges said this is something that is about to be settled and really we still have to rely on Brown at this time. Whether or not that should be some sort of retroactive effect to these defendants, I would argue no. Absolutely not, because they are people who are administering a jail on a day-to-day basis and they have to make these decisions in the moment. They cannot wait for the resolution of these murky areas of law that change on a day-to-day basis. When we're discussing the issues related to whether or not this was a... this decision to classify met heightened scrutiny or did not meet heightened scrutiny, as the Department of Justice mentioned, that has not been addressed. But the court raised a good point. Does heightened scrutiny apply to every gender classification within a county jail? And it would not appear so. It would seem that you don't have to make a... have an important basis related... I'm sorry, a... You would not have to have an important reason related to an important government objective to say that we're going to house women on one side of the jail, we're going to house men on the other side of the jail. That's not to say heightened scrutiny doesn't apply. What it is to say it's satisfied because of the compelling government interest under the heightened scrutiny test. So you're not saying it doesn't apply, you're saying it would be satisfied. It would be satisfied, but it doesn't... I would say that the same situation when you're... when you are... the same rationale for separating men and women is the same rationale that you... the government... I'm sorry, the El Paso County plaintiff's defendants employed in this case. They had an inmate who was coming into the jail who was still biologically male and the decision had to be made where to house her at that time. They were relying on the precedent that was in effect at that time, all of which did not put them on notice that their decisions would be violating a constitutional right or would be... or even that a clearly established constitutional right was at issue. Classification decision of a transgender person who is in transition or who may never transition fully from male to female in a biological sense, that is not a clearly established right that they have the right to be housed on the side of the jail that is in accordance with their gender identity. That itself is a very complex question. I would agree. And it's one that the on-the-ground defendants here are faced with on a daily basis and they have to address through multiple means, whether that be through the assistance of an ADA coordinator, through the employment of a classification manager, or by following the even murkier guidance under the Prison Rape... I'm sorry, my time has expired. Go ahead and finish your thought. I would just finish by saying that the only guidance that the defendants in this case did have to rely on were the Prison Rape Elimination Act, which simply says that classification of transgender individuals should be taken on a case-by-case basis, and the... I'm sorry, the ADA, which, despite the government's position during this administration, says trans... and I apologize for the outdated terminology, but transsexual gender identity disorders, however you want to term that, gender identity disorders are not protected by the ADA. Without this fair notice to these defendants, they should be granted qualified immunity. They did not have the ability to establish the requisite mens rea for deliberate indifference or intent that is required under the ADA, and the case should be... the ruling of the lower court should be upheld. Could you give a minute rebuttal for Ms. Rao? Thank you, Your Honors. Just two quick points on the Equal Protection Claim. I heard my friend on the other side talk about fair notice. It has been clear for decades that sex-based classifications get heightened scrutiny. Judge Rothman, the way you articulated the question is absolutely correct. But wouldn't you concede the law relating to transsexualism is very much evolving and hasn't been well-established for decades? There's two issues in equal protection, two ways of looking at this case. One is just the traditional way of doing equal protection, which is that classifications based on sex get heightened scrutiny. That's been clear for decades, and that is totally subtle law. Then the question is whether transgender people constitute a protected class that gets intermediate scrutiny. That's a separate question. That's the question that Brown didn't even really address, although said in this case we can't find that this person gets heightened scrutiny. But the Equal Protection Claim is a Monell claim principally, and qualified immunity doesn't even apply to that claim. So there's nothing to the extent Brown is confusing to some district courts. It just has no bearing on this case, and this court should make that clear. Judge Tinkovich, nothing this panel will say about this case. We'll call into question the jail or prison's abilities to, by default, separate men and women by sex. All the court will need to say here is that based on this complaint, the jail's decision to adhere to a sex-based classification based on the individual record here at the complaint worth its individualized history is enough to trigger heightened scrutiny, and that the district court, again, said that it would have no problem saying that she survives a motion, or should survive under the proper standard in this case. Thank you. Thank you, counsel. Your time's expired. We appreciate the arguments. They were helpful. Counsel is excused, and the case is submitted.